COLLOTON, Circuit Judge,
concurring in part and dissenting in part.
I concur in all but Part II.B of the opinion of the court. I disagree, however, with the court’s holding that 11 U.S.C. § 526(a)(4) is unconstitutionally overbroad in violation of the First Amendment, and I would therefore reverse the district court’s decision declaring this statutory provision unconstitutional.
Milavetz, Gallop, & Milavetz, P.A., mounts a facial attack on § 526(a)(4), arguing that the section’s potential application to attorneys in hypothetical situations requires that the statute be declared imper- *798 missibly overbroad and unconstitutional. This case involves a facial challenge in the First Amendment context, “under which a law may be overturned as impermissibly overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute’s plainly legitimate sweep.” Wash. State Grange v. Wash. State Republican Party, — U.S. -, 128 S.Ct. 1184, 1190 n. 6, 170 L.Ed.2d 151 (2008). This “overbreadth doctrine,” however, is “strong medicine that is used sparingly and only as a last resort.” New York State Club Ass’n, Inc. v. City of New York, 487 U.S. 1, 14, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988) (internal quotations omitted). It should be applied only when there is “a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court.” City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). The Supreme Court recently emphasized that it has “vigorously enforced the requirement that a statute’s overbreadth be substantial, not only in an absolute sense, but also relative to the statute’s plainly legitimate sweep.” United States v. Williams, — U.S. _, 128 S.Ct. 1830, 1838, 170 L.Ed.2d 650 (2008).[13]
To resolve the constitutional challenge brought by Milavetz, we must first construe the disputed statute. When presented with a constitutional challenge to an Act of Congress, we have not only the power, but the duty, to adopt a narrowing construction that will avoid constitutional difficulties whenever possible. Boos v. Barry, 485 U.S. 312, 330-31, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). In Boos, for example, the Court considered a provision of federal legislation that made it unlawful “to congregate within 500 feet of any [embassy, legation, or consulate] and refuse to disperse after having been ordered so to do by the police.” Id. at 329, 108 S.Ct. 1157 (internal quotation omitted). The Court observed that “[s]tanding alone, this text is problematic because it applies to any congregation within 500 feet of an embassy for any reason.” Id. at 330, 108 S.Ct. 1157 (first emphasis added). Nonetheless, citing the “duty to avoid constitutional difficulties by [adopting a narrowing construction] if such a construction is fairly possible,” the Court construed the statute narrowly to permit the dispersal of only congregations that are directed at an embassy, and to allow dispersal “only when the police reasonably believe that a threat to the security or peace of the embassy is present.” Id. at 330-31, 108 S.Ct. 1157 (internal quotation omitted). Similarly, in United States v. X-Citement Video, Inc., 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), the Court emphasized that “it is incumbent upon” a federal court to read a *799 statute to eliminate constitutional doubts, “so long as such a reading is not plainly contrary to the intent of Congress.” Id. at 78, 115 S.Ct. 464.
The challenged provision in this case provides in part that “[a] debt relief agency shall not ... advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title.” 11 U.S.C. § 526(a)(4). Milavetz argues that according to this provision, a debt relief agency may not advise a client to incur any debt for any purpose when the client is contemplating the filing of a petition for bankruptcy. As such, Milavetz contends that an attorney could be sanctioned for “fulfilling his duty to his client to give legal and appropriate advice not otherwise prohibited by the Bankruptcy Code.” (Brief of Appellee 80). Even under Milavetz’s broad construction of the statute, a facial challenge resting on a “few hypothetical situations,” ante, at 794, is unlikely to justify invalidating a statute in all of its applications, because “the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.” Vincent, 466 U.S. at 800, 104 S.Ct. 2118.
It is unnecessary to resolve whether § 526(a)(4) is impermissibly overbroad when given its broadest reading, however, because the government suggests an acceptable narrowing construction of the statute that would avoid most constitutional difficulties. The government contends that “in contemplation of’ filing for bankruptcy is a term of art that denotes an action taken with the intent to abuse the protections of bankruptcy laws. Under this view, the statute should be construed to prohibit only advice that a client engage in conduct for the purpose of manipulating the bankruptcy system.
The text, structure, and legislative history of § 526(a)(4) provide adequate support for a narrowing construction. Particularly given the latitude of federal courts to narrow a text to avoid constitutional difficulties, see Boos, 485 U.S. at 330-31, 108 S.Ct. 1157, the words “in contemplation of ... filing a case” need not create impermissible overbreadth. Rather, we may recognize that the phrase “in contemplation of’ has been construed in the bankruptcy context to mean actions taken with the intent to abuse the protections of the bankruptcy system. Black’s Law Dictionary reflects this understanding, defining “contemplation of bankruptcy” as “the thought of declaring bankruptcy because of the inability to continue current financial operations, often coupled with action designed to thwart the distribution of assets in a bankruptcy proceeding.” Black’s Law Dictionary 336 (8th ed.2004) (emphasis added). American and English authorities construing the bankruptcy laws also support the proposition that the words “in contemplation of’ may be understood to require an intent to abuse the bankruptcy laws. In re Pearce, 21 Vt. 611, 19 F. Cas. 50, 53 (D.Vt.1843) (No. 10873) (concluding that an act was done “in contemplation of bankruptcy” if it was done “in anticipation of breaking or failing in his business, of committing an act of bankruptcy, or of being declared bankrupt at his own instance, on the ground of inability to pay his debts, and intending to defeat the general distribution of effects, which takes place under a proceeding in bankruptcy.”) (emphasis added); Morgan v. Brundrett, 5 Barn. & Ad. 289, 296, 110 Eng. Rep. 798, 801 (K.B.1833) (Parke, J.) (interpreting “in contemplation of bankruptcy” to mean that “the payment or delivery must be with intent to defeat the general distribution of effects which takes place under a commission of bankruptcy.”); Fidgeon v. Sharpe, 5 Taunt. 539, 545-46, 128 Eng. Rep. 800, *800 802-03 (C.P.1814) (Gibbs, C.J.) (An act made in contemplation of bankruptcy “must be intended in fraud of the bankrupt laws.”); cf. Buckingham v. McLean, 54 U.S. 151, 167, 13 How. 151, 14 L.Ed. 91 (1851) (“To give to these words, contemplation of bankruptcy, a broad scope, and somewhat loose meaning, would not be in furtherance of the general purpose with which they were introduced.”); id. at 169 (relying on English bankruptcy decisions as instructive authority on meaning of the former Bankrupt Act). Our duty to construe the statute to avoid constitutional difficulties counsels that we should look to these authorities for a plausible alternative to the broad construction urged by Mila-vetz.
The structure of § 526(a)(4) also supports a narrowing construction. The prohibitions of this statute can be enforced only through the civil remedies provided in § 526(c). An attorney who violates § 526(a)(4) can be sanctioned in just three situations: if a debtor sues the attorney for the available remedies — remittal of fees, actual damages, and reasonable attorney’s fees and costs; if a state attorney general sues for a resident’s actual damages; or if a court finds that the attorney intentionally violated § 526(a)(4), and chooses to “impose an appropriate civil penalty.” 11 U.S.C. § 526(c). The remedies for a violation thus emphasize actual damages. But legal and appropriate advice that would be protected by the First Amendment, yet prohibited by a broad reading of § 526(a)(4), should cause no damage at all. If an attorney advises a debtor to refinance his home to lower mortgage payments, or to purchase a reliable car to enable him to pay off his debts, see ante, at 793-94, then a debtor following that advice would suffer no damage. There is no reason to believe that a client could recover the remittal of attorney’s fees or that a court would find a civil penalty “appropriate” as a remedy for legal advice that benefits both the debtor and his creditors. Rather, a debtor is likely to have a remedy against an attorney only in the case of an abusive bankruptcy petition, where the debtor may suffer damages if the petition is dismissed as abusive, see 11 U.S.C. § 707(b)(1), and where an attorney general or a court has reason to seek or impose sanctions against an abusive debt relief agency. The remedial focus of § 526 thus bolsters the proposition that § 526(a)(4) was aimed only at advice given by a debt relief agency that is designed to abuse the bankruptcy process.
The incorporation of an abusive purpose requirement into § 526(a)(4) is also consonant with the evident purpose of the statute. The government argues, and Mila-vetz acknowledges, that a principal goal of Congress in passing the statute was to “preclude debtors from taking on more debt knowing that it will later be discharged during bankruptcy.” (Brief of Appellee 34). A narrowing construction of § 526(a)(4) is in accord with expressions of desire in the legislative history to address “misconduct by attorneys and other professionals,” and “abusive practices by consumer debtors who, for example, knowingly load up with credit card purchases or recklessly obtain cash advances and then file for bankruptcy relief.” H.R.Rep. No. 109-31, pt.l, at 5,15 (2005) (internal quotation omitted), as reprinted in 2005 U.S.C.C.A.N. 88, 92, 101. Milavetz itself argues that a broad construction of § 526(a)(4) “goes beyond” this congressional purpose, and is “absurd,” because it would prevent an attorney from advising a client to take actions that might avoid the need for filing bankruptcy altogether. (Brief of Appellee 34). Given our duty to construe an Act of Congress in a manner that eliminates constitutional doubts, there is.no need to adopt a construction that one *801 party says is absurd, that the other party says was unintended by Congress, and that sweeps in salutary legal activity that would be a strange target for a statute entitled the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.
For these reasons, I would reverse the district court’s decision declaring unconstitutional the provision codified at 11 U.S.C. § 526(a)(4).

. The district court purported to consider only an "as-applied” challenge to § 526(a)(4), rather than an overbreadth challenge, and ultimately declared the section "unconstitutional as applied to attorneys.” Milavetz, Gallop & Milavetz, P.A. v. United States, 355 B.R. 758, 766 n. 4, 769 (D.Minn.2006). The majority correctly recognizes that the district court's approach is really an overbreadth analysis, and considers the statute under that framework. See ante, at 792 & n. 7, 793, 794 & n. 10. The "as applied” method of analysis, by contrast, considers the statute’s application to a "particular claimant” based on "harm caused to the litigating party.” Turchick v. United States, 561 F.2d 719, 721 n. 3 (8th Cir.1977). "The 'as applied' method vindicates a claimant whose conduct is within the First Amendment but invalidates the challenged statute only to the extent of the impermissible application.” Id. (emphasis added). The district court and the majority have declared § 526(a)(4) unconstitutional in all of its applications to all attorneys, and the supporting reasoning is thus consistent with "facial overbreadth analysis.” Id. (punctuation omitted).